IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 24-CR-181 (JEB) |
| v. | : : : | 40 U.S.C. § 5104(e)(2)(D) <br> 40 U.S.C. § 5104(e)(2)(G) |
| **ROBERT COPPOTELLI,** | : | |
| Defendant. | : : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Robert Coppotelli, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

      4.     As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

      5.     At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

      6.     At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.    Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.    In advance of January 6, 2021, the defendant, Robert Coppotelli, traveled from his home in Toms River, New Jersey, to the Washington, D.C., area.

9.    On January 6, 2021, Coppotelli entered onto the restricted portion of U.S. Capitol grounds from the west and approached the Lower West Terrace area of Capitol grounds. That day, Coppotelli wore a red hoodie, a black beanie, a blue face mask, and a grey jacket with the name of his business "Coppotelli Heavy Equipment Sales & Services, Inc." written on the back and left breast of the jacket.

10.   At or around 2 p.m., Coppotelli entered covered scaffolding immediately north of the Lower West Terrace. This scaffolding was erected in advance of the presidential inauguration scheduled to take place at the U.S. Capitol on Jan. 20, 2021. Underneath this scaffolding were the Northwest Stairs, which led from the Lower West Terrace to the Upper West Terrace.

11. At approximately 2:19 p.m., Coppotelli scaled the Northwest Stairs and reached the Upper West Terrace, which provides access to the first floor of the Capitol building. Coppotelli then proceeded to the Senate Wing Door, which was used during normal operations as an emergency exit. At 2:13 p.m., shortly before Coppotelli arrived in the area, other rioters had smashed out windows to the left and right of the Senate Wing Door, crawled through, and kicked open the doorway, allowing other rioters to enter the building.

12. At 2:24 p.m., Coppotelli entered the Capitol building through the Senate Wing Door. As Coppotelli entered through the doorway, a loud, audible alarm blared overhead, and shattered glass was on the ground inside and outside the entryway. Coppotelli turned right and walked toward the center of the building.

13. At approximately 2:28 p.m., Coppotelli entered the Crypt, a large circular room at the center of the first floor of the Capitol building.

14. At 2:34 p.m., Coppotelli continued through the Crypt toward the Memorial door staircase, which led to the second floor of the Capitol building.

15. During this period, police had temporarily secured the Senate Wing Door entryway and were attempting to clear rioters from that portion of the building. At 2:36 p.m., Coppotelli walked back through the Crypt to reach the Senate Wing Door, where police had barricaded the doorway. Police guided Coppotelli and others out of the building through a broken window adjacent to the Senate Wing Door.

16. Coppotelli unlawfully entered the Capitol building with the crowd of other demonstrators in order to impede, disrupt, or disturb the orderly conduct of the Congressional proceedings taking place within the U.S. Capitol that day.

*Elements of the Offense*

17. The parties agree that Disorderly Conduct in a Capitol Building or Grounds, 40 U.S.C. § 5104(e)(2)(D), requires the following elements:

   a. First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

   b. Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

   c. Third, the defendant acted willfully and knowingly.

18. The parties agree that Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G), requires the following elements:

   a. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

   b. Second, the defendant acted willfully and knowingly.

*Defendant's Acknowledgments*

19. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he willfully and knowingly engaged in disorderly or disruptive conduct in a United States Capitol Building or Grounds with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress. Further, the defendant admits that he willfully and knowingly paraded, demonstrated, or picketed in a United States Capitol Building.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Hutton Marshall*
J. HUTTON MARSHALL
Assistant U.S. Attorney

                U.S. Attorney's Office for the
District of Columbia
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov

b. Second, the defendant acted willfully and knowingly.

### Defendant's Acknowledgments

19. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he willfully and knowingly engaged in disorderly or disruptive conduct in a United States Capitol Building or Grounds with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress. Further, the defendant admits that he willfully and knowingly paraded, demonstrated, or picketed in a United States Capitol Building.

Respectfully submitted,

MATTHEW M. GRAVES

United States Attorney

D.C. Bar No. 481052

By: /s/ Hutton Marshall

J. HUTTON MARSHALL
Assistant U.S. Attorney
U.S. Attorney's Office for the
District of Columbia
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov

### DEFENDANT'S ACKNOWLEDGMENT

I, Robert Coppotelli, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8/14/24

Robert Coppotelli
Defendant

### ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

8/14/2024
Date:

David Benowitz
Attorney for Defendant