**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-181 (JEB)** |
| **v.** | : | |
| | : | |
| **ROBERT COPPOTELLI,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Robert Coppotelli has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Coppotelli to 14 days of incarceration on Count Three and 12 months of probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.    Introduction

Defendant Robert Coppotelli participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

1

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Coppotelli pleaded guilty to engaging in disruptive and disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D), and to parading, picketing, and demonstrating in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by the enthusiastic willfulness of the defendant's conduct in joining the violent mob on January 6, 2021 as it overran the Capitol building. He watched as police fought to defend the Capitol building from the riotous crowd, but instead of disengaging, he chanted "storm the gates" and pressed on with the other rioters, entering the Senate Wing Door at 2:24 p.m., barely 10 minutes after the Capitol building was first breached at that location.

The Court must also consider that Coppotelli's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Coppotelli's crime support a sentence of 14 days of incarceration followed by 12 months of Probation.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. See ECF No. 22 (Statement of Offense).

*Defendant Coppotelli's Role in the January 6, 2021 Attack on the Capitol*

In the weeks leading up to January 6, 2021, Coppotelli texted with two associates about then-President Donald Trump's efforts to challenge the 2020 presidential election results and about traveling to Washington, D.C. on January 6, 2021, when a joint session of Congress was set to vote on certifying the Electoral College results. On Jan. 5, 2021, one friend texted Coppotelli regarding January 6: "it's going to actually be insane," "this might be the tipping point of the war," and "too be honest I think there is a 50/50 on tomorrow being the spake that starts the civil war." Coppotelli told the others he would leave to pick them up at 4 a.m. so the three men could reach D.C. in time to hear then-President Trump's speech.

On January 6, 2021, Coppotelli and his two associates drove from Toms River, New Jersey to Washington, D.C., where they attended Trump's speech at the Ellipse near the White House before walking to the U.S. Capitol. Videos recovered from Coppotelli's phone indicate that he then entered into the restricted perimeter established around the Capitol from the west and approached the West Plaza and Lower West Terrace, where the temporary inauguration stage was being constructed. As Coppotelli approached the West Plaza, where a large police line fought to keep rioters from the building, Coppotelli faced the Capitol and chanted "Storm the gates!"



*Screenshot from Ex. 1: Video recorded by Coppotelli's associate showing Coppotelli on West Plaza chanting "Storm the gates."*

At 1:45 p.m., on the north side of the West Plaza, rioters violently overran a thin line of police officers defending access to the Northwest Stairs, over which covered scaffolding had been erected as part of the inauguration stage and seating. Rioters then flooded into the scaffolding and up the stairs toward the Capitol building. Coppotelli and one of his two associates entered the scaffolding and scaled the Northwest stairs between 1:45 and 2:19 p.m.



*(Left) Screenshot from Ex. 2: Video recorded by Coppotelli's associate as two men entered inauguration scaffolding over staircase; (Right) Screenshot from Ex. 3: closed-circuit video showing Coppotelli and associate scaling Northwest Stairs at 2:19 p.m.*

Minutes earlier, at 2:13 p.m., the Capitol building had been breached for the first time that day. After rioters scaled the same Northwest Stairway to reach the Senate Wing Door, rioters used wooden planks, stolen police shields, and other blunt objects to smash the windows to the left and right of the Senate Wing Door. Rioters then crawled into the building through the smashed-out windows and kicked open the Senate Wing Door.

At 2:24 p.m., Coppotelli entered the Capitol building through the Senate Wing Door, approximately 11 minutes after the initial breach of the building at this entrance. As Coppotelli walked through the doorway, a loud alarm sounded in the entryway, and shattered glass from the adjacent windows was spread about the interior and exterior of the entryway.



*Screenshot from Ex. 4: CCV footage showing Coppotelli entering the Capitol building at 2:24 p.m.*

After entering the building, Coppotelli turned south and entered the Crypt, a large, circular room at the center of the Capitol's first floor. Rioters had overrun a police line in the room just minutes prior to Coppotelli's arrival.



*Screenshot from Ex. 5: CCV Footage showing Coppotelli in the Crypt inside the Capitol building at approx. 2:28 p.m.*

Coppotelli then circled the Crypt and, at 2:34 p.m., followed the crowd south out of the Crypt toward the Memorial Door Staircase, which led to the second floor of the Capitol.



*(Left) Screenshot from Ex. 6: CCV footage of Coppotelli in a small room south of the Crypt at approximately 2:34 p.m.; (Right) Screenshot from Ex. 7: Open-source video showing Coppotelli in same location.*

Coppotelli then returned to the Crypt and continued north back to the Senate Wing Door, which police had barricaded shut to prevent additional rioters from entering the building. He exited the building by crawling through a broken window adjacent to the Senate Wing Door at 2:36 p.m.





*Screenshots from Ex. 7-8: CCV footage showing Coppotelli approaching and crawling through broken window adjacent to Senate Wing Door at 2:36 p.m. as police re-established control of the area.*

*The Charges and Plea Agreement*

On April 11, 2024, the United States charged Coppotelli by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On September 3, 2024, pursuant to a plea agreement, Coppotelli pleaded guilty to Counts Three and Four of the Information, charging him with violating 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Four). By plea agreement, Coppotelli agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Coppotelli now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, Coppotelli faces up to six months of imprisonment and a fine of up to $5,000 for each count. Coppotelli must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d

1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to them. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 14 days of incarceration followed by 12 months of probation.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Coppotelli's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Coppotelli, the absence of violent or destructive acts is not a mitigating factor. Had Coppotelli engaged in such conduct, he would have faced additional criminal charges.

The circumstances of the offense are unprecedented and extremely serious—Coppotelli participated in a riot that caused Congress to a halt for several hours its certification of Electoral College vote for the 2020 presidential election. Coppotelli knew full well what he was doing when he entered the Capitol building, and that he shouldn't be doing it. By entering through the Senate Wing Door at 2:24 p.m., Coppotelli was close behind rioters who first breached the building minutes earlier. He followed the same path they did—entering the Capitol grounds from the west,

crossing the West Plaza and climbing the Northwest Staircase. This was a route replete with violence against police officers and other clear indications of the crowd's unauthorized, destructive presence on Capitol grounds. Coppotelli saw shattered glass near the Senate Wing Door, and he would have heard a loud alarm blaring as he entered through the doorway.

Rather than express alarm or outrage—or even hesitance—about all that he saw happening around him, Coppotelli expressed only enthusiasm. He chanted to "storm the gates" and proceeded to storm the building himself. This level of willfulness warrants a term of incarceration.

### B. Coppotelli's History and Characteristics

Coppotelli is 28 years old and resides in Toms River, New Jersey. He owns and operates Coppotelli Equities, a business that purchases, refurbishes, and sells heavy equipment. Coppotelli reported no physical, mental, or substance abuse issues. Further, unlike many criminal defendants that appear before this Court for sentencing, Coppotelli had the benefit a stable upbringing in a two-parent household, yet he still chose to travel from New Jersey to Washington, D.C. to join in the violent disruption of Congress's Joint Session on Jan. 6, 2021. Accordingly, there are no notable mitigating circumstances in Coppotelli's background.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to specifically deter Coppotelli also weighs in favor of a term of incarceration and a period of probation.  The determination and enthusiasm that Coppotelli showed in entering the Capitol and remaining within the Capitol while the riot swirled around him demonstrated his intent and conviction in attending and remaining to support the mob.  Probation is insufficient; this Court should prescribe incarceration in order to ensure that he understands, and remembers, the seriousness of his actions on January 6, 2021, and does not again engage in participation in a violent mob or other political violence.  As Judge Nichols noted, "as I've said in

every case I've had, every participant in the riots made an impact, as one of the primary strengths of the rioters on that day was their sheer number leading to many circumstances in which law enforcement was overwhelmed." *United States v. Joshua Doolin*, 21-cr-447 (CJN), Sentencing Tr. at 79 (Nichols, J.).

The Court must sentence Coppotelli in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[2] This Court must sentence Coppotelli based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012); *see United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

For example, in *United States v. Ruben Reyna*, 23-cr-5350 (CKK), the government recommended 14 days' incarceration and 12 months' probation and the court imposed that recommendation on a guilty plea as to 18 U.S.C. § 1752(a)(1). ECF 25 (Sentencing Memorandum), 34 (Judgment). Reyna was only in the Capitol for one minute; Coppotelli was in the building for over 10. And, similar to Reyna, Coppotelli entered through a broken door (Reyna through a broken window). Reyna had additional conduct, such as posting multiple images of his actions to Facebook; here, Coppotelli did not.

This case is also comparable to *United States v. Victor Martinez*, 23-cr-39 (TSC), where Judge Chutkan sentenced the defendant to 14 days of incarceration followed by 36 months of probation after Martinez pled guilty to violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). Like Coppotelli, there was no evidence that Martinez was violent on January 6, 2021, but both men willingly joined the riot as it overran the Capitol that day. While Martinez was in the Capitol for a longer period of time than Coppotelli (50 minutes compared to 10 minutes), Martinez also entered the building later in the day than Coppotelli, who breached the Senate Wing Door not long after it was initially broken open by rioters.

Finally, this case is also comparable to *United States v. Eric Harrower*, 23-cr-240 (JEB), where this court sentenced the defendant to 12 months of probation with 10 days of intermittent confinement after Harrower pled guilty to violating 40 U.S.C. § 5104(e)(2)(G). Harrower took a similar path to the Capitol building as Coppotelli—through the West Plaza and up the Northwest Stairs, where several police lines were overrun—and entered in a similar time frame through the Senate Wing Door shortly after its initial breach. And while Harrower assisted other rioters climb

onto the Northwest Stairs from a bike rack, Coppotelli yelled encouragement to other rioters as he chanted for them to "Storm the gates!" Harrower was in the Capitol for 12 minutes longer than Coppotelli, but it is notable that Coppotelli also pled guilty to 40 U.S.C. § 5104(e)(2)(D), in which Coppotelli explicitly admitted that it was he engaged in disruptive or disorderly conduct with the specific intent to disrupt a session of Congress.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Coppotelli must pay $500 in restitution, which reflects in part the role Coppotelli played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Coppotelli's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI.    Fine

Coppotelli's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on Coppotelli to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, Coppotelli has not shown an inability to pay, thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days of incarceration, 12 months of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Coppotelli's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

17

D.C. Bar No. 481052

By:    <u>s/ *Hutton Marshall*   </u>
JOSEPH HUTTON MARSHALL
Assistant U.S. Attorney
U.S. Attorney's Office for the
District of Columbia
DC Bar No. 1721890
601 D Street N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov